IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RANDY ALLEN MARLER,

                Petitioner,

    v.                                            CASE NO. 20-3247-JWL-JPO

DONALD LANGFORD,

                Respondent.

## MEMORANDUM AND ORDER

This matter is a petition for writ of habeas corpus pursuant 28 U.S.C. § 2254 that was filed pro se. Petitioner Randy Allen Marler, who is now represented by counsel, challenges his state-court convictions of rape, aggravated indecent liberties with a child, and endangering a child. Having considered the parties' arguments, the state-court record, and the relevant legal precedent, the Court concludes that Petitioner is not entitled to federal habeas corpus relief and denies the petition.

### Nature of the Petition

Petitioner seeks relief from his convictions of sexual crimes against his minor daughter. His sole remaining ground for relief in this matter is his assertion that the State violated his constitutional rights by withholding a recording of an interview that he asserts he could have used at trial to impeach the credibility of a witness against him. The Kansas Court of Appeals (KCOA) rejected this argument, and Petitioner argues to this Court that the KCOA's decision requires this Court to issue a writ of habeas corpus because it "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States," *see* 28 U.S.C. § 2254(d)(1), and "was based on an unreasonable determination of the facts in light of the evidence

1

presented in the State court proceeding," *see* 28 U.S.C. § 2254(d)(2).

## Factual and Procedural Background

In May 2008, Petitioner was tried before a jury in Sumner County, Kansas, on charges of rape, sodomy, endangering a child, and aggravated indecent liberties with a child. *See State v. Marler*, 290 Kan. 119, 120 (2010) (*Marler I*). The victim was Petitioner's minor daughter, H.M, and the trial largely was a credibility contest. H.M. and her mother Pamela Marler (Pam[1]) testified that Petitioner committed certain acts; a detective testified about Petitioner's confessions to criminal sexual acts against H.M.; and Petitioner testified that he had not committed any of the acts of which he was accused. The evidence admitted at trial included a written confession in which Petitioner described, among other things, sexual acts he and Pam committed against H.M. and a recording of an interview by law enforcement during which Petitioner affirmed his confessions. *See Marler v. State*, 2013 WL 58570049, *3 (Kan. Ct. App. 2013) (*Marler II*), *rev. denied* Aug. 14, 2014. At trial, Petitioner recanted the written statement, explaining that he had made the statements in an effort to protect the children by ensuring they would be removed from Pam's care.[2] *See Marler v. State*, 2019 WL 6973449, *2 (Kan. Ct. App. 2019) (*Marler III*), *rev. denied* Aug. 31, 2020.

The jury acquitted Petitioner of the sodomy charge but convicted him of rape, aggravated indecent liberties with a child, and endangering a child. *Marler I*, 290 Kan. at 120. Petitioner was sentenced to two consecutive sentences of life imprisonment without possibility of parole for 25 years. He pursued a timely direct appeal and, in January 2010, the Kansas Supreme Court (KSC) affirmed his convictions and sentences. *Id.* Petitioner did not seek a writ of certiorari in the United

---

[1] The Court intends no disrespect by its use of the informal "Pam"; it uses this diminutive to refer to H.M.'s mother in conformity with the practice used by the state courts and the parties in previous filings.
[2] Additional facts are detailed as necessary in the discussion section below.

2

States Supreme Court.

In January 2011, Petitioner filed a motion in state court seeking habeas relief under K.S.A. 60-1507 based on alleged ineffective assistance of trial counsel. The district court denied the motion and, after Petitioner appealed, the KCOA affirmed the denial. *Marler II*, 2013 WL 5870049, at *1, 13. On August 14, 2014, the KSC denied Petitioner's petition for review.

In July 2015, Petitioner filed a second K.S.A. 60-1507 motion. *Marler III*, 2019 WL 6973449. While those proceedings were ongoing, in February or March of 2016, Petitioner's counsel discovered a video recording of a May 1, 2007 law enforcement interview with Pam, hereinafter referred to as "the interview." In addition to arguing that counsel in his first 60-1507 was ineffective, Petitioner argued to the district court in his second 60-1507 that the interview contained impeachment evidence and that the State had failed to disclose it to trial counsel.[3] *Id.* at 13. By doing so, Petitioner contended, the State violated his Fourteenth Amendment due process rights as recognized in *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding material and exculpatory evidence. The district court held an evidentiary hearing but denied relief and, on appeal, the KCOA affirmed the denial. *Id.* at *1. On August 31, 2020, the KSC denied Petitioner's petition for review.

On September 30, 2020, Petitioner filed in this Court a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The Court conducted an initial review of the petition as required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and concluded that the petition was not timely filed, so it directed Petitioner to show cause why this matter should not be dismissed. (Doc. 3.) After receiving and considering Petitioner's

---

[3] By this point, trial counsel was deceased, so he could not advise whether he had received the interview during pretrial discovery. Counsel who represented Petitioner during his initial K.S.A. 60-1507 proceedings, however, testified that he was unaware of the recording.

3

response (Doc. 4), the Court directed Respondent to file a limited Pre-Answer Response addressing timeliness. (Doc. 6.) Respondent did so (Doc. 9), and Petitioner filed a pro se reply to the Pre-Answer Response (Doc. 11).

Without ruling on the timeliness issue, the Court ordered Respondent to show cause why the writ should not be granted. (Doc. 12.) In September 2021, however, before Respondent had filed an answer, counsel entered an appearance for Petitioner and successfully moved to file an amended petition. (Docs. 14, 15, 16, and 19.) The amended petition asserted that by ordering an answer to the petition, the Court had implicitly found that the petition was timely filed. (Doc. 26, p. 13.) Because this assertion was incorrect, the Court stayed the deadline for Respondent to answer the petition and instead set a schedule for the parties to submit their final arguments on timeliness. (Doc. 28.)

After receiving and carefully considering written arguments from both parties, the Court concluded that all grounds in the amended petition except one were untimely. (Doc. 31.) Accordingly, in an order issued June 10, 2022, the Court dismissed Grounds 1, 2, 4, and 5 of the amended petition as time-barred and ordered Respondent to show cause why the writ should not be granted based on the sole remaining asserted ground for relief: the claim that the State violated his Fourteenth Amendment due process rights as recognized in *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding the interview. (Doc. 31, pp. 6, 18.)

Respondent filed his answer on June 29, 2022 (Doc. 32), and Petitioner filed his traverse on August 28, 2022 (Doc. 37).

## Standard of Review

This matter is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, when a state court has adjudicated the merits of a claim, a federal court may

grant habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). In this context, an "unreasonable application of" federal law "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks omitted).

The Court presumes that the state court's findings of fact are correct unless Petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). *See also Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."). These standards are intended to be "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and require that state-court decisions receive the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

## Discussion

As noted above, the sole remaining ground for relief in this matter is Petitioner's argument that the State violated his constitutional due process rights as articulated in *Brady* by withholding material and exculpatory evidence, namely, the interview.

In 1963, the United States Supreme Court issued its opinion in *Brady*, which "held that the government violates the Constitution's Due Process Clause 'if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment.'" *See Turner v. United States*, 137 S. Ct. 1885, 1888 (2017) (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)); *see also Brady*, 373 U.S. at 87 ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment,

irrespective of the good faith or bad faith of the prosecution"). Nine years later, the Supreme Court made clear that where "credibility as a witness [is] an important issue in the case," nondisclosure of evidence that affects a witness' credibility, known as impeachment evidence, also implicates due process rights. *See Giglio v. United States*, 405 U.S. 150, 153-55 (1972).

Thus, under *Brady* and *Giglio*, in order to prove a constitutional violation, Petitioner bears the burden to show that the State suppressed the interview, that the interview was favorable to him, and that the interview was material evidence. *See United States v. Holloway*, 939 F.3d 1088, 1105 (10th Cir. 2019). In other words, "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The KCOA addressed the *Brady* claim as follows:

> Marler argues that the State failed to disclose a tape-recorded interview of Pam that contained exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Specifically, Marler complains that the State failed to turn over a recording of a May 1, 2007 interview of Pam. We exercise de novo review over the existence of a *Brady* violation but give deference to the district court's finding of fact. *State v. DeWeese*, 305 Kan. 699, 709, 387 P.3d 809 (2017).
>
> To establish a *Brady* violation Marler must show: (1) the evidence was favorable because it is exculpatory or impeaching; (2) the evidence was suppressed by the State; and (3) the evidence is " 'material so as to establish prejudice.' " 305 Kan. at 710.
>
> Marler argues that in the interview "Pam admitted to participation in the incident with H.M." In the taped interview, Pam admits to helping carry H.M. from the couch into Marler and Pam's bedroom, smoking methamphetamine, and getting into bed with Marler and H.M. She also states she did not think that she sucked on H.M.'s nipple and that she knew Marler was going to do sexual things to H.M. Marler argues this contradicts Pam's claim that she had nothing to do with the abuse, and thus admission of the tape would have been detrimental to her credibility.
>
> However, as the district court held, the evidence in the interview was far

> from favorable to Marler, and thus, the inculpatory evidence in the interview outweighed the weak impeachment value. This evidence included: (1) odd and inappropriate interactions between Marler and H.M. (such as Marler telling H.M. he wanted her to practice putting condoms on him, telling H.M. to touch his penis, and having H.M. sit on his lap and touching her); (2) Marler's expanding sexual fantasies (progressing from "girl-on-girl" to wanting Pam to involve their dog in sex acts to wanting H.M. involved); (3) Marler's February evening road trip with H.M.; (4) Pam and Marler fighting after Marler returned from that road trip with a visibly unsteady H.M.; (5) Pam and Marler fighting the following day before Pam left to pick up T.M. from school and fighting again when Pam returned home to see Marler positioned to perform oral sex on H.M.; (6) fighting more and smoking more meth with Marler that evening; (7) H.M. and T.M. receiving Nyquil from Marler; (8) Marler giving H.M. Valium or Xanax; (8) Marler commenting to Pam that H.M. was not a virgin; (9) and Marler making comments that in some places it is normal to sell daughters for prostitution and not being bothered by a neighbor going to prison for molesting his daughter. Importantly, throughout the interview, Pam strenuously denied engaging in any sexual acts with H.M.
>
> This inculpatory evidence outweighs any minimal impeachment value of the interview. Thus, any use of the interview by defense counsel would have likely harmed Marler, not helped him. Marler has failed to establish the first requirement of a *Brady* violation.
>
> Also important is that the district court never made a finding that the State had suppressed the videotape. Although Marler asserts that it is undisputed that the State did not disclose the tape until August 2016, he points to no evidence establishing that the State agreed the tape was not timely disclosed. His only factual support for his contention that the tape was suppressed is that Spencer did not have the tape and Marler claimed to have never seen the tape. This does not mean the tape was never disclosed to Shores. We cannot assume the videotape was suppressed given the record on appeal. We see no *Brady* violation.

*Marler III*, 2019 WL 6973449, at *13-14.

Petitioner argues that the KCOA unreasonably applied *Brady* and related cases in finding that the interview was not favorable and that the KCOA's finding regarding whether the interview was suppressed was an unreasonable determination of fact. (Doc. 27, p. 37-39.) Because the question of suppression is dispositive, the Court addresses it first. Whether the evidence in question was suppressed is a question of fact. *See Van Woudenburg ex rel. Foor v. Gibson*, 211 F.3d 560, 571-72 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th

7

Cir. 2001); *Shattuck v. Workman*, 2010 WL 4917252, *4 (N.D. Okla. Nov. 24, 2010) (citing *Van Woudenburg* and denying *Brady* claim based on habeas petitioner's failure to rebut the presumption of correctness of the state court's "factual determination that [he] had failed to demonstrate[] that [the evidence] ever existed."). As noted above, the Court presumes that the KCOA's findings of fact are correct unless Petitioner shows clear and convincing evidence to rebut that presumption. *See* 28 U.S.C. § 2254(e)(1).

Petitioner challenges the KCOA's finding on suppression in multiple ways. First, he asserts that in the state district court, the State failed to argue that it had not suppressed the recording. (Doc. 27, p. 38; Doc. 37, p. 8.) The record before the Court does not support this assertion. Petitioner first raised the *Brady* claim in a 2016 motion to amend his K.S.A. 60-1507 petition. In the response to the motion to amend, the State expressly stated that it "does not concede the recording from May 1, 2007, was not discovered (*sic*) by the prosecution in this case." Although the State's response largely focused on the materiality of the interview, it also requested that if the district court believed the interview could be material, it set "an evidentiary hearing on the matter . . . to determine if the evidence was actually suppressed . . . ."

Thus, the State did not concede in the district court that the evidence was suppressed. Moreover, Petitioner bore the burden to show a *Brady* violation in the state district court. *See Fontenot v. Crow*, 4 F.4th 982, 1062 (holding that to show a *Brady* violation, "'[t]he defense needs to establish these elements by a preponderance of the evidence'"). Thus, the State was not under any obligation to affirmatively prove that it had disclosed the interview.

Next, Petitioner notes that the attorney who represented him in the first K.S.A. 60-1507 proceeding testified during the second K.S.A. 60-1507 proceeding that he had not received the interview and Petitioner testified that he was not aware of the interview during or prior to trial.

8

(Doc. 27, p. 38-39.) The Court declines to infer from this testimony that trial counsel never received the interview. In other words, Petitioner's testimony that he personally was unaware of the interview at the time of trial, even when considered alongside the testimony of counsel for the first 60-1507 proceeding that he was also unaware of the interview, does not amount to clear and convincing evidence that the recording was not disclosed to *trial counsel*.[4]

Third, Petitioner points out that the State's proposed findings of fact and conclusions of law submitted to the state district court did not include a finding that the interview was *not* suppressed and the state district court ultimately did not make a finding as to whether the interview was suppressed. *Id.* at 38. Petitioner is correct. Instead of making an express finding under *Brady*, the state district court framed the issue as whether the failure to use the interview at trial and during the first 60-1507 proceeding constituted ineffective assistance of counsel. The district court's written order did not mention *Brady* at all.

The district court's failure to rule on the issue, although odd, is not a sufficient reason to grant federal habeas relief. As noted above, the KCOA addressed the *Brady* argument in its opinion, specifically discussing whether there was sufficient evidence to find that the interview was suppressed and whether the interview was favorable.

Fourth, Petitioner contends that under state law, the State should not have been allowed to argue for the first time on appeal that it had not suppressed the interview, so the KCOA improperly considered the argument. (Doc. 27, p. 38-39.) But whether the State made procedurally improper arguments for the first time on appeal that the KCOA nevertheless considered is irrelevant to this Court's analysis. "'To the extent [the petitioner] argues the state court erroneously interpreted and applied state law, that does not warrant habeas relief[.]'" *Hawes v. Pacheco*, 7 F.4th 1252, 1264

---

[4] It is unfortunate that by the time the *Brady* issue arose in state court, trial counsel had died and could not advise whether the recording had been disclosed.

(10th Cir. 2021)(quoting *Boyd v. Ward*, 179 F.3d 904, 916 (10th Cir. 1999)). The fact remains that the KCOA considered the suppression argument.

The KCOA held that the record before it did not support finding that the interview was suppressed. This is a factual finding and, as such, is presumed correct unless Petitioner rebuts the presumption by clear and convincing evidence. *See Fontenot*, 4 F.4th at 1063 (holding that the state court's opinion necessarily found that evidence was suppressed before a certain date and a determination that the evidence was disclosed "would require rebutting the state court's finding via clear and convincing evidence"). After a careful review of the record, and for the reasons explained above, the Court finds that Petitioner has not done so.

Accordingly, the state court's factual finding that there was insufficient evidence to show that the interview was suppressed must stand. Without a finding of suppression, there can be no *Brady* violation. *See United States v. Griebel*, 312 Fed. Appx. 93, 9697 (10th Cir. 2008) (unpublished) (holding that a failure to prove suppression of evidence is fatal to a *Brady* claim). Therefore, the Court need not address Petitioner's remaining arguments.

The Court additionally notes, however, that the record does not support Petitioner's assertions regarding the interview's impeachment value. Petitioner contends that the interview would have impeached Pam's credibility because it includes statements that "significantly contradict[]" Pam's trial and preliminary hearing testimony. But Pam testified at trial largely about the events of one day, while the statements Petitioner points to in the interview concerned events on a different day; they are not contradictory.

The record also does not support Petitioner's assertion that at trial Pam "testified that she had no knowledge of the event prior to it happening." (See Doc. 27, p. 37; *see also* Doc. 37, p. 4.) The pages to which Petitioner cites reflect Pam's testimony that Petitioner "would talk about . . .

fantasies with other women, but whenever he mentioned [H.M.'s] name I would tell him to shut up." In fact, Pam expressly agreed at trial with the statement that "at some point [Petitioner] mentioned something about [H.M.]" and she elaborated that Petitioner talked about "[w]hat he wanted to do. What he wanted us to do." This is consistent with Pam's preliminary hearing testimony that she "knew what he wanted to do . . . [b]ecause he talked about it and I always told him to stop talking about [H.M.]" In addition, while being cross-examined at the preliminary hearing, Pam agreed that she "knew that [Petitioner] wanted to have sex with your daughter."

Finally, even if those statements or any other could reasonably be read as Pam denying prior knowledge, the interview does not include a contradictory statement. The only statement Pam made in the interview regarding prior knowledge occurred when she was asked if she knew what Petitioner planned to do to H.M. in the bedroom and Pam said she "assumed." Petitioner's claims that Pam "committed perjury" during the trial and that the State effectively "presented false evidence at trial" and "fail[ed] to correct Pam Marler's false testimony," are not supported by the record. (*See* Doc. 27, p. 37; Doc. 37, p. 5-6.)

## Evidentiary Hearing

Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court determines that an evidentiary hearing is not required in this matter. "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Anderson v. Att'y Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record."). The record in this case refutes Petitioner's factual allegations and otherwise precludes habeas relief.

## Conclusion

For the reasons set out above, the Court concludes Petitioner is not entitled to federal habeas corpus relief. Because the Court enters a decision adverse to Petitioner, it must consider whether to issue a certificate of appealability.

Under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court identifies the specific issue that meets that showing. 28 U.S.C. § 2253.

Having considered the record, the Court finds Petitioner has not made a substantial showing of constitutional error in the state courts and declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition for habeas corpus is denied. No certificate of appealability will issue.

**IT IS SO ORDERED.**

DATED:  This 2nd day of September, 2022, at Kansas City, Kansas.

S/ John W. Lungstrum

JOHN W. LUNGSTRUM
United States District Judge