IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RANDY ALLEN MARLER,

                Petitioner,

      v.                                                CASE NO. 20-3247-JWL-JPO

DONALD LANGFORD,

                Respondent.

## MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner Randy Allen Marler's motion for reconsideration (Doc. 40), filed September 30, 2022. For the reasons explained below, the motion is denied.

### Background

A recitation of some of the relevant history is helpful in understanding the current motion. Petitioner was charged in Sumner County, Kansas with rape, sodomy, endangering a child, and aggravated indecent liberties with a child. On March 6, 2008, the district court held a hearing on a motion for continuance of the trial filed by Petitioner; Petitioner was present in person at the hearing and was represented by trial counsel, Sean Shores. (R. VI, p. 120, 122.) At that hearing, Mr. Shores referred to a motion to enforce plea agreement that he anticipated filing, explaining:

> "The basis of the motion, Your Honor, is essentially we were offered a plea agreement, and we accepted it. The State withdrew it. . . . It was a situation where the plea offer was made. And he was suppose[d] to view the videotapes and see if he wanted to accept the plea offer. He was not able to view the videotapes based on mis - - miscommunication with the jail until I believe it was Monday of this week. Immediately upon viewing the videotape, he wanted to go forward with the plea agreement, but the State's indicating that they withdrew it, so we're filing a motion to enforce essentially a contract."

*Id.* at 125-26.

1

The prosecutor, Kassie McEntire, explained to the Court that she "communicated the withdrawal of the offer within a couple of days after it was made. Mr. Shores maintained that he had not told his client that. And that Mr. Marler wanted to accept the offer at the beginning of the week." *Id.* at 120, 129. She contended that she withdrew the offer before it was accepted, explaining:

> "Mr. Shores told me Thursday that Mr. Marler had not accepted the offer. That he wished to talk to him further. And I told him again that I . . . had tried to e-mail him. That e-mail was never received. So in court that Thursday I told him that the offer had been withdrawn."

*Id.* at 129.

After further questioning by the Court, trial counsel agreed that the plea offer had been withdrawn before Petitioner accepted it. *Id.* at 129-30. The district court denied the continuance but advised trial counsel that he was welcome to file a written motion to enforce the plea agreement. It does not appear that trial counsel did so. And the timing of the plea offer was not clarified further at that time.

Later that year, a jury in Sumner County, Kansas convicted Petitioner of rape, endangering a child, and aggravated indecent liberties with a child, and Petitioner was sentenced to two consecutive sentences of life imprisonment without possibility of parole for 25 years. *See State v. Marler*, 290 Kan. 119, 120 (2010) (*Marler I*). Petitioner pursued a timely appeal, raising four issues:

> "(1) The district court erroneously admitted evidence of Marler's prior drug use under K.S.A. 60–455; (2) the district court gave an erroneous limiting instruction on the drug use evidence; (3) the district court erred in denying Marler's departure motion; and (4) the sentences imposed were disproportionately severe in violation of the Eighth Amendment to the United States Constitution and Section 9 of the Kansas Constitution Bill of Rights."

*Id.* On January 29, 2010, the Kansas Supreme Court affirmed the convictions and the sentences. *Id.*

Next, Petitioner filed a motion in state court seeking habeas relief under K.S.A. 60-1507. *Marler v. State*, 2013 WL 5870049, *2 (Kan. Ct. App. 2013) (unpublished) (*Marler II*), *rev. denied* Aug. 14, 2014. The district court held an evidentiary hearing at which Petitioner was present and represented by attorney Kerwin Spencer and at which Petitioner testified, "I didn't do this crime, okay. I could of [*sic*] took a plea deal for this for 68 months, and I wouldn't do that because I didn't

2

do it." (R. XXIII, p. 139.) The district court ultimately denied the motion. *Marler III*, 2013 WL 5870049, at *2. On appeal from the denial, Petitioner argued that

> his trial counsel was ineffective by failing to: (1) file a motion to suppress Marler's confession, (2) object to the admission of evidence of Marler's prior drug use, (3) contest the State's failure to prove the element of Marler's age, and (4) argue that the imposition of two consecutive hard 25 sentences would constitute cruel and unusual punishment under the Kansas Constitution Bill of Rights.

*Id.* at *1. On October 25, 2013, the Kansas Court of Appeals affirmed the denial and on August 14, 2014, the Kansas Supreme Court denied review. The record now before the Court does not reflect that the plea offer referenced above was a main issue in those proceedings.

In July 2015, Petitioner filed a second K.S.A. 60-1507 motion. *Marler v. State*, 2019 WL 6973449, *1 (Kan. Ct. App. 2019) (unpublished) (*Marler III*), *rev. denied* Aug. 31, 2020. In the operative amended motion for relief in that proceeding, Petitioner argued, among other things, that he "was denied his statutory right to the effective assistance of habeas counsel when Attorney Spencer failed to raise the issue that Attorney Shores was ineffective in failing to timely communicate the State's plea offer to Petitioner." (R. II, p. 3, 8.) By the time of the amended motion, Petitioner was represented by counsel, Richard Ney. *Id.* at 11.

In a later document filed in the second 60-1507 proceeding, Petitioner again framed the issue as whether Mr. Spencer was ineffective for failing to argue that Mr. Shores was ineffective for failing to timely communicate the plea offer. *Id.* at 27. That document provides that the plea offer discussed at the March 2008 hearing was the plea offer at the basis of the claim of ineffective assistance of counsel. *Id.* at 28. In support of the argument, Petitioner attached a recently obtained affidavit from the prosecutor who handled Petitioner's criminal case, Kassie McEntire. *Id.* After setting forth Ms. McEntire's involvement in the criminal case, the affidavit stated:

> 4. At some time during the pendency of the prosecution of the case, I made a plea offer to Mr. Marler's attorney, Sean Shores. At this point in time, I do not remember the exact nature of the plea agreement, but acknowledge that the plea was to lesser charges than those for which Mr. Marler was charged and convicted.
> 5. After I extended the plea offer, Mr. Shores immediately informed me that Mr. Marler would not take the plea.
> 6. A couple of days after I had made the offer, I informed Mr. Shores that the

3

>plea offer was withdrawn. During the time between the offer and its being withdrawn, Mr. Shores did not communicate to me one way or the other whether he had spoken with his client about the offer or whether his client had accepted or rejected the offer.
>    7. If Mr. Shores had indicated to me that Mr. Marler wished to accept the plea before I withdrew the offer, I would have adhered to the offer and would have let Mr. Marler plead pursuant to the deal."

*Id.* at 36-37.

The district court held an evidentiary hearing on the 60-1507 motion on December 1, 2016, at which Petitioner was present in person and represented by counsel. (R. IV.) At that hearing, Mr. Spencer testified and, among other things, agreed that he believed Petitioner had told him during the initial 60-1507 proceeding about "a plea being offered and withdrawn, accepted and withdrawn." (R. IV, 90.) On cross-examination, Mr. Spencer was asked whether Petitioner ever discussed with him "whether he wanted a plea or would accept a plea." *Id.* at 131. Over Petitioner's objection, Mr. Spencer testified: "Mr. Marler maintained that he didn't do this crime. His attorney talked with him about taking a plea. He was glad he didn't take a plea. He never did it. And he wanted his day in court on that." *Id.* at 133.

In its subsequent written opinion denying relief, the district court noted that "[t]he purported plea deal and its time-line is [*sic*] a troublesome issue and one fraught with confusion, misconception, vagueness, and miscommunication." (R. II, p. 154.) After thoroughly analyzing the conflicting evidence before it, the district court denied relief on the claim that Mr. Spencer had provided ineffective assistance of counsel for failing to argue that Mr. Shores had provided ineffective assistance of counsel by failing to communicate a plea offer. *Id.* at 154-62. The district court also denied relief on Petitioner's other asserted grounds and, on appeal, the Kansas Court of Appeals affirmed and the Kansas Supreme Court denied review.

On September 30, 2020, Petitioner filed in this Court his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) At the time, he was proceeding pro se. After conducting the required initial review of the petition, the Court issued an order to show cause directing Petitioner to explain why this matter should not be dismissed as untimely. (Doc. 3.) After receiving Petitioner's response, the Court directed Respondent to file a limited Pre-Answer Response addressing

timeliness. (Doc. 6.) After Respondent did so and Petitioner filed a pro se reply, the Court--without ruling on the timeliness issue--ordered Respondent to show cause why the writ should not be granted. (Doc. 12.)

In September 2021, however, counsel entered an appearance on behalf of Petitioner and moved to file an amended petition. (Docs. 14, 15, and 16.) The Court granted the motion, but the amended petition misconstrued the Court's ordering an answer to the original petition as an implicit finding that the original petition was timely filed. (*See* Doc. 28.) Noting the misunderstanding, the Court stayed the deadline for the answer and afforded the parties a final opportunity to present any additional arguments regarding timeliness. *Id.* Briefing was completed on June 9, 2022.

The following day, the Court issued a memorandum and order addressing the parties' arguments and explaining its reasoning for concluding that all grounds for relief except one--a claim that the State violated Petitioner's rights by suppressing a recording in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)--must be dismissed as untimely. (Doc. 31, hereinafter referred to as "the June M&O.") First, the Court rejected Petitioner's argument that the statute of limitations was not triggered by the finality of his direct appeal, as it generally is pursuant to 28 U.S.C. § 2241(d)(1)(A), but by the discovery of the evidence underlying the *Brady* claim. *Id.* at 6-7. Under 28 U.S.C. § 2241(d)(1)(B), Petitioner argued, the statute of limitations began to run on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action," or the date he discovered the recording.

The June M&O explained that the Tenth Circuit has instructed that "'§ 2241(d)(1) should be applied on a claim-by-claim basis.'" (Doc. 31, p. 6 (quoting *Burks v. Raemisch*, 680 Fed. Appx. 686, 690 (10th Cir. 2017)). As relevant to the motion now before the Court, Ground One of the amended petition was that "Petitioner was denied his Sixth Amendment right to the effective assistance of trial counsel in that Attorney Shores failed to timely communicate the State's beneficial plea offer." (Doc. 26, p. 7; Doc. 27, p. 14.) Specifically, it argued that "Shores either failed to communicate the offer or communicated the offer after it had lapsed." (Doc. 27, p. 16.) The June

5

M&O noted that this argument, of "trial counsel's failure to timely communicate a plea offer" was "unrelated to and unaffected by the State's alleged withholding of" the recording that formed the basis for Petitioner's *Brady* claim. (Doc. 31, p. 7.) After rejecting Petitioner's remaining arguments that his petition as a whole was timely filed, the Court dismissed as time-barred all grounds for relief except the *Brady* claim.

Respondent filed his answer on the sole remaining ground for relief on June 29, 2022 (Doc. 32) and Petitioner filed his traverse on August 28, 2022 (Doc. 37). On September 2, 2022, the Court issued a memorandum and order, in which it denied the petition, rejecting the *Brady* claim on its merits. (Doc. 38.) On September 30, 2022, Petitioner filed the motion now before the Court.

## Applicable Legal Standards

Petitioner seeks relief through his "Motion to Alter or Amend or Reconsider Pursuant to Fed. R. Civ. P. 59(e) and 60(b)(1) and 60(b)(6)." (Doc. 40.)

The Court may grant a motion to amend judgment under Rule 59(e) only if the moving party can establish: (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *see also Hayes Family Trust v. State Farm Fire & Casualty Co.*, 845 F.3d 997, 1004 (10th Cir. 2017) (quoting *Servants of the Paraclete*, 204 F.3d at 1012).

Under Rule 60(b), the Court may order relief from a final judgment, but only in exceptional circumstances. See *Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000). Rule 60(b) provides, in relevant part: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (6) any other reason that justifies relief." But a Rule 60(b) motion is "not the opportunity for the court to revisit the issues already addressed in the underlying order or to consider arguments and facts that were available for presentation in the underlying proceedings." *Nutter v. Wefald*, 885 F. Supp. 1445, 1450 (D. Kan. 1995).

## Analysis

In his motion, Petitioner asks the Court to reconsider its holding in the June M&O that Ground One of the amended petition was untimely, asserting that in reaching that conclusion, the Court misapprehended the facts, Petitioner's arguments, and the controlling law. (Doc. 40, p. 3-4.) He argues that the Court made a substantive mistake of law or fact by failing to sua sponte analyze the timeliness of Ground One under 28 U.S.C. § 2244(d)(1)(D), which would start the statute of limitations on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."[1] *See id.* at 9. He further contends that "the vital facts" necessary to raise the arguments in Ground One "were not known to him until March 16, 2016, when he received the Affidavit of Kassie McEntire . . . ." *Id.* at 6.

Specifically, Petitioner points to the portion of the affidavit that he asserts shows that Mr. Shores "immediately" rejected the plea offer.[2] *Id.* at 6-7. He contends that because he did not know prior to the affidavit that Mr. Shores had "immediately rejected the plea deal before consulting with" Petitioner, he could not have raised the arguments in Ground One until he received the affidavit in 2016.[3] *Id.* at 7. Petitioner also points to Ms. McEntire's statement in the affidavit that she would have adhered to the plea offer had Petitioner accepted it before it was withdrawn as another vital fact supporting his claim of ineffective assistance of counsel of which he was unaware prior to the affidavit.[4] *Id.*

---

[1] Neither Petitioner proceeding pro se nor counsel for Petitioner made any argument related to 28 U.S.C. § 2244(d)(1)(D) prior to the motion now before the Court.

[2] The Court notes that the affidavit stated: "After I extended the plea offer, Mr. Shores immediately informed me that Mr. Marler would not take the plea." Petitioner now characterizes that as stating that Mr. Shores "immediately rejected" the offer. The reasonableness of this interpretation is doubtful, considering that the March 2008 hearing included no mention of an immediate rejection of the offer and the testimony at that hearing reflected that even after this initial meeting, Ms. McEntire felt it necessary to formally communicate to Mr. Shores that she was withdrawing the offer. Considering the record as a whole, it is more reasonable to understand Mr. Shores' statement as expressing certainty that Petitioner would not take the plea once it was communicated to him.

[3] The Court also notes the arguments made in support of Ground One of the operative amended federal habeas petition were not only that Mr. Shores failed to communicate the plea offer before he immediately rejected it, but also--and somewhat contradictorily--that a constitutional violation occurred when Mr. Shores' "fail[ed] to communicate Petitioner's acceptance of the plea offer to the State before it was withdrawn." (Doc. 27, p. 18.) Petitioner has not explained why the McEntire affidavit is relevant to that portion of the argument in Ground One.

[4] By virtue of his personal presence at the March 2008 hearing, Petitioner has long been aware that Ms. McEntire extended a plea offer. The assertion that Petitioner did not know or believe until the 2016 affidavit that Ms. McEntire had intended to adhere to that plea offer as long as it remained pending is not credible. As Petitioner points out in his current motion, "'the limitations period begins to run when the petitioner knows of the facts giving rise to the habeas claim; it is not required that he or she understand the legal significance of those facts.'" (Doc. 40, p. 4. (quoting *Huddleston v. Coffman*, 2016 WL 8650109, *2 (D. Colo. June 21, 2016)).

As Petitioner concedes, the arguments in the present motion were not "specifically raise[d]" in the response to the Court's final request for additional arguments on timeliness. *Id.* at 9. Petitioner asserts, however, that the Court misapprehended the facts, Petitioner's position, and the controlling law by failing to liberally construe Petitioner's pro se filings to "raise[], perhaps inartfully, the argument that the factual predicates of his claims were undeveloped and not in the record." *Id.* The pro se pleading to which Petitioner now directs the Court does not support this argument.

Although the cited portion of the document does assert that prior to Petitioner's second 60-1507 motion, there "were undeveloped claims with none of their predicate facts in the record yet," it does so in the context of arguing for equitable tolling and it focuses on the discovery of the recording that formed the factual basis for the *Brady* issue. (*See* Doc. 4, p. 13.) Even liberally construing the pleading, at no point does it assert that there were undeveloped or unknown facts related to the plea offer. The Court liberally construes pro se pleadings, but it does not act as a pro se party's advocate. *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013). Thus, the Court did not make a substantive mistake of law or fact when it did not read into the pro se pleading a wholly absent argument involving the McEntire affidavit.

Next, Petitioner asserts in his motion to reconsider that his current federal habeas counsel's failure to argue that the affidavit should have triggered the statute of limitations for Ground One is the type of "mistake" that justifies relief under Rule 60(b)(1). (Doc. 40, p. 9.) As the Tenth Circuit has explained,

> "[T]he 'mistake' provision . . . provides for the reconsideration of judgments only where (1) a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority from a party, or (2) where the judge has made a substantive mistake of law or fact in the final judgment or order."

*Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576 (10th Cir. 1996).

The Court is unconvinced by Petitioner's contention that the first subsection of the mistake provision applies here. Petitioner does not provide any caselaw to support the proposition that an attorney's failure to include in a responsive document a particular argument is the sort of "mistake" or "excusable litigation mistake" contemplated by Rule 60(b)(1). Such an interpretation would

8

render meaningless the well-established holding that a Rule 60(b) motion is "not the opportunity for the court to . . . consider arguments and facts that were available for presentation in the underlying proceedings." *See Nutter*, 885 F. Supp. at 1450; *see also Cashner*, 98 F.3d at 577 ("Rule 60(b)(1) is not available to allow a party merely to . . . advance[] new arguments or supporting facts which were available for presentation at the time of the original argument.").

## Conclusion

Whether his motion is considered under Rule 59 or Rule 60, Petitioner has not met the standard for reconsideration or relief from the judgment of this Court. He has not established an intervening change in the controlling law, the availability of evidence that could not have been obtained prior to the June M&O, or the need to correct clear error or prevent manifest injustice, as needed for relief under Rule 59. Nor has he demonstrated mistake, inadvertence, surprise, excusable neglect, or any other reason justifying relief under Rule 60. Petitioner merely asks the Court to consider arguments that could have been made previously in a timely response to the Court's orders regarding timeliness but were not. Petitioner has shown no persuasive reason for the Court to alter or amend its prior conclusion that Ground One of this matter is time-barred.

**IT IS, THEREFORE, BY THE COURT ORDERED** that Petitioner's motion to alter or amend or reconsider (Doc. 40) is **denied**.

**IT IS SO ORDERED.**

DATED:   This 5th day of October, 2022, at Kansas City, Kansas.

S/ John W. Lungstrum

JOHN W. LUNGSTRUM
United States District Judge